***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence, other than the Form 22 Wage Chart, or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named Employee and named Employer.
3. The Carrier liable on the risk is correctly named above.
4. Plaintiff's average weekly wage will be determined by a Form 22.
5. Plaintiff sustained an injury on or about June 6, 2002, with the exact date to be determined by the Industrial Commission.
6. The issues for determination are:
 • Whether Plaintiff has missed the statute of limitations with respect to the alleged neck injury, thus barring his claim for workers' compensation benefits for the injury to the neck?
 • Whether Plaintiff's cervical spine condition is causally related to the injury by accident to his lumbar spine on June 6, 2002?
 • Whether Plaintiff sustained a compensable injury by accident to his neck arising out of and in the course and scope of his employment pursuant to N.C. Gen. Stat. § 97-2(6)? *Page 3 
 • Whether Plaintiff is entitled to ongoing medical treatment for injuries sustained on June 6, 2002, including treatment for his neck?
 • Whether Plaintiff is entitled to have medical bills paid for injuries sustained on June 6, 2002, including treatment to the neck?
 • Whether Defendants have waived their right to contest the compensability of Plaintiff's neck injury of June 6, 2002, pursuant to N.C. Gen. Stat. § 97-18(d)?
 • Whether Plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
 • Whether Defendants are entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
 • Whether Defendants should be sanctioned for failure to file the necessary Industrial Commission forms specifically denying the neck?
 ***********
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 57 years old. Prior to working for Defendant-Employer, Plaintiff was enlisted in the United States Army for twenty-six years until he retired in 1993. In November 1999, Defendant-Employer hired Plaintiff as a mechanic.
2. As a mechanic for Defendant-Employer, Plaintiff worked at the Maritime Operations Building where he repaired maritime equipment, including scuba diving equipment, boats, motors and closed circuit equipment. Plaintiff's work required him to lift in excess of 150 pounds and to bend, stoop, and perform work above his shoulder height on a regular basis. After two years at the Maritime Operations Building, Plaintiff was moved to the Main Post Facility where he worked for the majority of his time on military vehicles, including Hummers, trailers, *Page 4 
water buffalo and water trailers. Plaintiff's job continued to require heavy lifting when he worked on military vehicles.
3. On June 6, 2002, Plaintiff was changing an axle on a water trailer. In order to change out the axle, the wheel and hub had to be removed. Plaintiff testified that the wheel and hub weighed approximately 150 pounds. Plaintiff testified that after he removed the lug nuts and pulled the wheel off, he stood up, turned to the right, and immediately felt a pop in his back, resulting in pain, which caused him to fall to the floor. Plaintiff testified that he eventually got up, put his tools away and went home. Plaintiff did not report the injury to Defendant-Employer that same day and the incident was not witnessed.
4. On June 7, 2002, Plaintiff called in and reported to his supervisor that he had hurt his back the day before and he was unable to get out of bed due to pain. Plaintiff experienced pain from his "neck on down," including pain going down into his arms and legs.
5. Plaintiff attempted to go to work the following Monday, June 10, 2002, but he was informed by his supervisor that he needed a note from a doctor before he would be allowed to return to work. Defendant-Employer did not refer Plaintiff for medical treatment.
6. Plaintiff sought treatment at the Veterans' Administration Hospital (VA Hospital) on June 11, 2002. At this visit, Plaintiff was diagnosed with an exacerbation of his lumbar disc disease and was referred for an MRI. The MRI was not performed at that time. Plaintiff returned to the VA Hospital on June 14, 2002, for a re-evaluation of his low back pain. He was prescribed Naproxen 500 mg and ordered to bedrest for seven days. Plaintiff returned to the VA Hospital again on June 24, 2002, with complaints of low back pain and pain radiating into his arms and legs. *Page 5 
7. During the course of Plaintiff's treatment, medical providers from the VA Hospital did not provide him with a release to return to work note. Plaintiff has not worked for Defendant-Employer since his June 6, 2002 injury.
8. Plaintiff's medical history revealed that prior to his employment with Defendant-Employer, he was involved in an automobile accident in July 1997. As a result of his injuries, he had surgery on his neck in April 1998.
9. Defendants filed a Form 63, Notice to Employee of Payment of Compensation Without Prejudice, which was completed on July 10, 2002. The Form 63 indicated that benefits commenced on June 27, 2002, for an injury on June 6, 2002. The Form 63 did not specify what body part Plaintiff injured. Defendants also assigned a nurse case manager, Michelle Williams, to Plaintiff's claim pursuant to the North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims to assist Plaintiff.
10. Defendants began to direct medical treatment by arranging for Plaintiff to be treated by Dr. Timothy R. Detamore, D.O. at Carolina Neurosurgical Services, P.A., on August 14, 2002. Dr. Detamore noted that no x-rays or MRIs had been performed, and he wanted to have these tests before his examination.
11. Plaintiff returned to Dr. Detamore on September 12, 2002, for a complete evaluation. Plaintiff's chief complaint was of combined back and leg pain. Plaintiff reported that he lifted a trailer wheel weighing from 150 to 200 pounds in June 2002, and developed a sudden, sharp pain radiating into his low back, buttock, right leg and right foot. Plaintiff told Dr. Detamore that the pain had been present since the injury. Plaintiff denied symptoms associated with cervical radiculopathy. Dr. Detamore determined that Plaintiff had a combined lumbar radiculopathy and a myelopathy somewhere in the spinal cord above the L5/S1 level. Dr. *Page 6 
Detamore diagnosed cervical myelopathy, cervical radiculopathy, and lumbar radiculopathy. Dr. Detamore ordered a myelogram and took Plaintiff out of work until his next visit scheduled for October 4, 2002. Plaintiff testified that the nurse case manager attended all of his appointments.
12. On September 16, 2002, Plaintiff underwent pre-myelogram studies, which revealed degenerative disc disease at L5-S1, mild degenerative disc disease at C4-5 and C6-7, and a prior fusion at C5-6. Plaintiff then underwent a myelogram on September 23, 2003, which revealed prior fusion at C5-6 with unremarkable findings, broad based disc bulges at C3-4, C4-5 and C6-7, and broad based disc bulges at L3-4, L4-5 and L5-S1. Defendants paid for these diagnostic tests.
13. Following the myelogram, Plaintiff returned to Dr. Detamore on October 3, 2002, for further treatment. Dr. Detamore recommended that Plaintiff undergo an anterior cervical diskectomy, spondylectomy, osteophytectomy, bilateral foraminotomy and partial corpectomy at the C3-4 and C4-5 levels. Dr. Detamore performed the surgery on October 24, 2002. At the time Plaintiff's surgery was performed, Defendants had not denied liability for Plaintiff's neck condition. At some point after the surgery, Defendants refused to authorize or pay for it. Defendants paid for the following treatment by Dr. Detamore: the August 14, 2002 treatment was paid on October 29, 2002; the September 12, 2002 treatment was paid on October 28, 2002; the October 3, 2002 treatment was paid on April 1, 2003.
14. Dr. Detamore completed his residency in neurosurgery and is board certified in neurological surgery with a specialty in neurosurgery. He is active in the osteopathic neurosurgery profession as an educator and a former professor of neurological surgery in neurosurgery. He was tendered as an expert in neurosurgery. *Page 7 
15. Dr. Detamore opined to a reasonable degree of medical certainty, based on Plaintiff's test results, medical history, and his examination findings that the surgery he performed was necessitated by Plaintiff's injury of June 6, 2002. Dr. Detamore testified, "[w]hat he came to me for was complaints of pain which he said was in his low back and leg. The complaints of pain in my medical opinion was [sic] a combination of cervical myelopathy, cervical radiculopathy, spinal cord compression, and nerve root irritation which was brought on at the time of the lifting of this heavy weight. That's what caused those symptoms to become present even though he had the pre-existing condition of degenerative osteoarthritis."
16. Dr. Detamore also testified that "[w]hen I examined him — and he did come to me with this complaint of a lumbar radicular complaint only. [sic] And yet on my examination, I found not as much of a problem with a lumbar radicular symptoms and signs on his examination. I found more of a cervical both myelopathy and radiculopathy and that his focus was primarily on a lumbar radicular symptoms."
17. Dr. Detamore retired from practice after Plaintiff's surgery. Dr. Detamore transferred Plaintiff's care to Dr. Carol Wadon at Carolina Neurosurgical Services, P.A. Dr. Wadon examined Plaintiff for the first time on November 7, 2002. At that time, Plaintiff was experiencing numbness in his arms and difficulty in turning his head. Dr. Wadon recommended a cervical MRI. Following the cervical MRI, Plaintiff saw Dr. Wadon again for a follow-up visit on November 14, 2002. Dr. Wadon noted that the cervical MRI revealed evidence of post-operative changes at C3-4 and C4-5 with some persistent stenosis. Dr. Wadon recommended that Plaintiff undergo a posterior cervical decompression with fusion and instrumentation, followed by an anterior cervical decompression with fusion and instrumentation. The surgery was performed on November 27, 2002. *Page 8 
18. Dr. Wadon saw Plaintiff again on January 14, 2003 and February 27, 2003. Dr. Wadon ordered a lumbar MRI on January 17, 2003, which revealed mild multilevel spondylosis and degenerative disc disease most prominent at the L4-5 and L5-S1 levels. Dr. Wadon did not recommend further surgery and instead referred Plaintiff for pain management. Despite the referral for pain management, Dr. Wadon found that Plaintiff had reached maximum medical improvement and assigned a 10% permanent partial impairment rating to his low back on February 27, 2003. Dr. Wadon was of the opinion that Plaintiff's cervical problems were the result of degenerative changes.
19. Defendants did not pay for the surgery Dr. Wadon performed on Plaintiff's neck on November 27, 2002, but they did pay for the treatment provided by Dr. Wadon on February 27, 2003, and the January 17, 2003 diagnostic tests ordered by Dr. Wadon. Defendants also paid for pain management treatment provided by Dr. Harris upon the referral of Dr. Wadon. Plaintiff testified that he did not receive any correspondence from Defendants denying treatment for his neck and he did not have notice that Defendants were denying payment for any treatment of his neck until Defendants refused to authorize some prescribed medications after his surgery performed by Dr. Wadon. Plaintiff's testimony that he did not have notice that Defendants were denying payment for his neck treatment until after both surgeries is found to be credible.
20. The nurse case manager assigned by Defendants attended all of Plaintiff's medical appointments with Dr. Detamore. Defendants had actual knowledge, or access to information provided to them that Plaintiff was receiving treatment for his neck from Dr. Detamore and Dr. Wadon. Defendants allege that around June or July 2002, their claims adjuster, Hillary Bessett, informed Plaintiff that workers' compensation was only covering treatment for his back and not his neck; however, Defendants did not file a Form 61 denying a causal *Page 9 
relationship between Plaintiff's neck condition and his admittedly compensable injury. Defendants first informed the Commission that they were not paying for Plaintiff's neck treatment when they filed their Form 33R and amended Form 33R's on or about January 7, 2005, January 11, 2005 and March 9, 2005, in response to Plaintiff's October 21, 2004 request for hearing.
21. Dr. Wadon referred Plaintiff to Dr. Toni Harris at Eastern Carolina Pain Management for his low back and bilateral extremity pain. Dr. Harris first saw Plaintiff on April 7, 2003. Plaintiff gave a history of having undergone a cervical fusion in 1998. He reported that he had done well thereafter with the exception of some neck and shoulder pain. He further reported that he was injured at work in June 2002, and had undergone a second anterior cervical fusion, which was done by Dr. Detamore. Thereafter, his pain increased and Dr. Wadon performed an additional surgery, which gave him some improvement, but he still experienced pain in the neck, along with a popping sensation and headaches that radiated up the occipital region of his head. Plaintiff also reported shoulder and upper back pain, numbness in the index fingers, weakness in the right arm, low back pain on the right side which extended to the left side, pain and numbness extending down his right leg to the foot and pain in his left leg extending to the knee. Plaintiff reported that he could sleep from ½ to 2 hours per night. Dr. Harris diagnosed Plaintiff with low back and bilateral lower extremity pain related to his workplace injury, and neck and shoulder pain secondary to his fusion surgery. Plaintiff was referred for an EMG/NCS of the upper extremities and lower extremities. The results were negative for muscle and nerve damage.
22. Plaintiff continued to treat with Dr. Harris. He received epidural steroid injections for his back and was referred to physical therapy. On October 15, 2003, Dr. Harris *Page 10 
released Plaintiff from her care, stating that he was at maximum medical improvement and assigning him a 5% permanent partial impairment rating to his low back. Dr. Harris also recommended that a functional capacity evaluation (FCE) be performed. Plaintiff underwent the FCE on October 4, 2004. Plaintiff's FCE results indicated that he was capable of performing sedentary work.
23. In July 2004, Plaintiff filed a Form 18 notice of accident, reporting an injury to his back and both legs on June 6, 2002. On October 21, 2004, Plaintiff filed a Form 33 request for hearing, alleging that he injured his upper, middle and lower back. Defendants responded through the filing of three Form 33R responses to Plaintiff's request for hearing.
24. Defendants assigned a vocational rehabilitation professional to work with Plaintiff; however, the vocational rehabilitation file was closed on October 26, 2004.
25. On June 21, 2005, Plaintiff underwent an independent medical examination (IME) with Dr. Jaylan R. Parikh, a board-certified orthopedic surgeon at Orthopedic Solutions Sports Medicine Center. During the history portion of the examination, Dr. Parikh noted that Plaintiff had a pre-existing condition of cervical spondylosis with cervical stenosis and had undergone three cervical spine surgeries. Dr. Parikh did not think Plaintiff's cervical spine problem was related to his work injury on June 6, 2002. He was of the opinion that Plaintiff's neck problems were a continuation of the neck problems he experienced prior to the workplace incident. Dr. Parikh testified, "[b]ased on my clinical examination, physical examination and reviewing the records, I feel that his neck injury was not related to the work-related injury — his neck problems [are] not related to the work-related injury he has in June 2002." He felt Plaintiff's neck condition was a continuation of the wear and tear from the two levels previously fused. *Page 11 
26. Dr. Parikh observed that Plaintiff was walking with a cane and appeared to have difficulty walking due to pain and he was wearing a back brace. His physical examination was very limited because any range of movement produced pain. He diagnosed low back pain associated with lumbar disc disease aggravated by the work-related injury of June 2002. He recommended sedentary work and a pain management program primarily due to his low back pain. He was of the opinion that Plaintiff would not be able to sit or stand at work more than 30 minutes without a break.
27. Both Dr. Parikh and Dr. Wadon opined that Plaintiff's cervical condition was due to degenerative conditions. Dr. Detamore opined that Plaintiff's complaints of pain resulted from a combination of cervical myelopathy, cervical radiculopathy, spinal cord compression, and nerve root irritation which was brought on by his workplace injury. The Full Commission gives greater weight to the opinions of Dr. Detamore over the contrary opinions of Dr. Wadon and Dr. Parikh and finds that Plaintiff's workplace injury by accident on June 6, 2002 significantly contributed to the cervical spine condition for which Dr. Detamore treated Plaintiff and performed surgery. Plaintiff began treatment with Dr. Detamore approximately six weeks after his workplace accident. Plaintiff did not treat with Dr. Wadon until approximately four and one half months later and Dr. Parikh performed the IME approximately three years later. Dr. Detamore was tendered as an expert in neurosurgery and he performed a complete evaluation of Plaintiff.
28. Based on the greater weight of the evidence, Plaintiff suffered a compensable injury to his neck and back on June 6, 2002, as a direct result of a specific traumatic incident of the work assigned to him by Defendant-Employer. *Page 12 
29. Plaintiff's claim for compensation for an injury to his neck as a result of the June 6, 2002 injury by accident is not time barred. Plaintiff filed written notice of a claim for compensation for his neck condition within two years after payment of medical compensation for treatment for his neck condition. Specifically, Plaintiff filed his Form 18 in July 2004, alleging that he injured his back and both legs. Prior to filing his Form 18, Defendants accepted liability for Plaintiff's claim arising from his injury on June 6, 2002 by filing a Form 63 agreeing to pay without prejudice on July 10, 2002, which they did not later deny within ninety days. Therefore, Defendants' liability for Plaintiff's June 6, 2002 injury was established and the Commission was vested with jurisdiction over the claim. Defendants also did not specifically deny liability for Plaintiff's neck condition until 2005, when Defendants filed responses to Plaintiff's request for hearing. Additionally, Defendants referred Plaintiff to Dr. Detamore and paid for the treatment provided on August 14, 2002, September 12, 2002 and October 3. 2002. Since Plaintiff did not have written notice that the claim to his neck was being denied and Defendants had accepted liability for his injury pursuant to the Form 63, he was justified in not making a specific claim for a neck injury and Defendants were not prejudiced by any arguable delay in Plaintiff's filing of a Form18. Defendants knew or had reason to know from the progress reports of the medical case manager they assigned to the claim, that Plaintiff was receiving treatment for his neck condition from Dr. Detamore.
30. With respect to disability, at the time of the hearing before the Deputy Commissioner, Plaintiff remained out of work and continued to receive temporary total disability benefits. Defendants did not dispute Plaintiff's continuing disability from work due to the injury to his lumbar spine. Also, as of the date of Dr. Parikh's IME on June 21, 2005, approximately a month after the hearing, Plaintiff was having difficulty walking due to pain, he was using a cane *Page 13 
and Dr. Parikh was of the opinion that he needed pain management treatment primarily for his low back. Dr. Detamore testified that he would need to examine Plaintiff to determine whether he has reached maximum medical improvement and is able to work. Dr. Wadon released Plaintiff without restrictions, but referred him to pain management, therefore her release of Plaintiff to return to work without restrictions is given no weight. Dr. Harris was of the opinion that Plaintiff reached maximum medical improvement by October 15, 2003, and assigned a five percent (5%) rating to his low back. After an FCE, Dr. Harris was of the opinion that Plaintiff could perform sedentary work as of October 4, 2004. Defendants initially assigned a vocational rehabilitation professional to assist Plaintiff, but vocational rehabilitation was stopped on October 26, 2004. Considering his physical limitations and work restrictions due to his injury and his past employment in heavy labor, Plaintiff would benefit from vocational rehabilitation assistance.
31. The medical treatment Plaintiff has received was reasonably required and tended to effect a cure, provide relief and/or lessen his disability.
32. Plaintiff is entitled to have Defendants pay for medical expenses incurred or to be incurred as a result of the compensable neck and back injury as may be required to provide relief, effect a cure or lessen the period of disability.
33. Plaintiff will need future medical treatment for his compensable injury.
34. Neither party has presented nor defended this claim unreasonably, as a genuine dispute existed on whether Plaintiff's neck condition is compensable and whether Defendants properly denied treatment for Plaintiff's neck condition.
35. Defendants have not waived their right to contest the compensability of Plaintiff's neck condition pursuant to N.C. Gen. Stat. § 97-18(d). Defendants accepted liability for *Page 14 
Plaintiff's injury and have made a reasonable argument that they did not intend to accept liability for Plaintiff's neck injury. The surgery to Plaintiff's neck occurred more than 90 days after the Form 63 was filed. Defendants' delay until 2005, in specifically denying liability for the neck was unreasonable considering the fact that they had knowledge that their authorized treating physician was treating and had performed surgery on Plaintiff's neck. However, since Defendants admitted the compensability of part of the claim, the circumstance presented herein does not appear to be specifically addressed by the waiver provision of N.C. Gen. Stat. § 97-18(d). Also, Defendants denied compensability of the neck within 90 days of Plaintiff's Form 33 request for hearing which stated in writing he was claiming compensation for his "upper," middle and lower back. No sanctions are warranted for Defendants' failure to file a Form 61.
36. Plaintiff's average weekly wage is $662.06, yielding a compensation rate of $441.40.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's claim for compensation for his neck injury is not barred pursuant to N.C. Gen. Stat. § 97-24. Defendants had notice that Plaintiff was claiming an injury by accident on June 6, 2002, and that the doctor to whom they referred Plaintiff for treatment of his injuries was treating Plaintiff for his neck as well as his back. Defendants accepted Plaintiff's claim on a Form 63, pay without prejudice, which they did not later deny, thereby giving the Industrial Commission jurisdiction of the entire claim. Plaintiff had reasonable excuse for not filing written notice of his claim or giving written notice of an injury to his neck until July 2004, because *Page 15 
Defendants admitted liability for his injury by accident, and he was receiving medical compensation for his neck condition and had no reason to know that his claim for injury to his neck was being disputed. Defendants were not prejudiced by Plaintiff's delay in filing a claim for his injury, including his neck injury until July 2004. Plaintiff filed written notice of his injury to his neck within two years from Defendants' last payment of medical treatment for his neck condition on April 1, 2003. Defendants referred Plaintiff to Dr. Detamore, paid for the initial treatments with Dr. Detamore on August 14, 2002, September 12, 2002, October 3, 2002, and assigned a nurse case manager who attended all of the appointments and provided reports of the treatment progress to both parties. At the conclusion of the September 12, 2002 appointment, Dr. Detamore recommended that Plaintiff undergo a myelogram. The myelogram was conducted on September 23, 2002. Plaintiff then returned to Dr. Detamore on October 3, 2002, to discuss the findings of the myelogram, and ultimately decided to proceed with surgical treatment of his cervical spine. Defendants authorized and paid for Plaintiff's above noted appointments with Dr. Detamore. Defendants' last payment of medical compensation for Plaintiff's neck was April 1, 2003. McGhee v. Bank of America Corp., 173 N.C. App. 422, 685 S.E.2d 833
(2005) (stating that although workers' compensation claimant did not file her claim within two years of her accident, her claim was timely since she filed her claim within the two-year period following the last payment of medical compensation by employer).
2. On June 6, 2002, Plaintiff sustained an admittedly compensable injury to his back, which arose out of and in the course of his employment and was a direct result of a specific traumatic incident of the work assigned, resulting in injuries to Plaintiff's cervical and lumbar spine. Compensability was admitted for the injury on a Form 63, pay without prejudice, and Defendants did not later deny the claim within 90 days, although they did subsequently deny *Page 16 
compensability for the neck condition outside of the 90 days. N.C. Gen. Stat. §§ 97-2(6) and 97-18(d).
3. Plaintiff's neck condition is causally related to his injury by accident on June 6, 2002. The Full Commission has given greater weight to the opinions of Dr. Detamore that Plaintiff's complaint of pain was a combination of cervical myelopathy, cervical radiculopathy, spinal cord compression, and nerve root irritation, which was brought on by his June 6, 2002 injury by accident and that Plaintiff's symptoms were caused by his injury by accident. N.C. Gen. Stat. § 97-2(6).
4. Defendants have not disputed Plaintiff's entitlement to continuing temporary total disability compensation for his lower back injury. As of the date of hearing before the Deputy Commissioner on May 17, 2005, Plaintiff remained out of work and was receiving temporary total disability compensation. With respect to disability resulting from Plaintiff's cervical and lumbar injuries, Dr. Detamore testified that he would need to examine Plaintiff to determine whether he has reached maximum medical improvement or is able to work. Dr. Wadon released Plaintiff without restrictions, but referred him to pain management. Dr. Parikh, the doctor who performed an independent medical examination of Plaintiff approximately one month after the hearing, did not give a permanent partial impairment rating, but did recommend pain management mainly for Plaintiff's lower back and gave restrictions of no sitting or standing for more than 30 minutes at a time without a break. Dr. Harris was of the opinion that Plaintiff reached maximum medical improvement by October 15, 2003, and assigned a five percent (5%) rating to his low back. After an FCE, Dr. Harris was of the opinion that Plaintiff could perform sedentary work as of October 4, 2004. Defendants initially provided vocational rehabilitation *Page 17 
assistance to Plaintiff, but terminated it on October 26, 2004. Plaintiff would benefit from vocational rehabilitation assistance.
5. As a result of his June 6, 2002 injury by accident, Plaintiff is entitled to have Defendants pay temporary total disability compensation at the rate of $441.40 per week for the period from June 6, 2002 and continuing, until further order of the Commission. N.C. Gen. Stat. § 97-29.
6. As a result of his June 6, 2002 injury by accident, Plaintiff is entitled to have Defendants pay for medical expenses incurred or to be incurred as a result of his compensable cervical and lumbar injuries for so long as such treatment may reasonably be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§97-25; 97-25.1.
7. Neither party has presented nor defended this claim unreasonably as a genuine dispute existed concerning whether Plaintiff's neck condition is compensable, whether Plaintiff gave timely notice that he was seeking treatment for his neck condition, and whether Defendants properly denied treatment for Plaintiff's neck condition. Therefore, neither party is entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1. No sanctions are warranted for Defendants' failure to timely deny liability for Plaintiff's neck on a Form 61 under the circumstances of this case.
8. Plaintiff's average weekly wage was $662.06, yielding a compensation rate of $441.40. N.C. Gen. Stat. § 97-2(5).
 *********** *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following: *Page 18 
 AWARD
1. Defendants shall continue to pay to Plaintiff temporary total disability benefits at the rate of $441.40 per week from the date of his June 6, 2002 injury and continuing, until further order of the Commission.
2. Defendants shall pay all medical expenses incurred or to be incurred in the future for Plaintiff's cervical and lumbar spine injuries when bills for the same have been submitted and approved according to procedures adopted by the Industrial Commission.
3. An attorney's fee of twenty-five percent of the continuing future compensation awarded Plaintiff herein is approved for Plaintiff's attorney and shall be paid as follows: every fourth check from the continuing future compensation due Plaintiff shall be deducted and paid directly to Plaintiff's attorney.
4. Plaintiff's and Defendants' claims for attorney's fees under N.C. Gen. Stat. § 97-88.1 are DENIED.
5. Defendants shall pay the costs.
 This the __ day of March 2007. *Page 19 
 S/_________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_________________________ PAMELA T. YOUNG COMMISSIONER
DISSENTING:
S/_________________________ BUCK LATTIMORE CHAIRMAN *Page 20